UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAVOINE GAINEY,

                Petitioner,

    -vs-

JAMES T. CONWAY,

                Respondent.

**DECISION AND ORDER**

**No. 08-CV-00083T**

_____

## I.    Introduction

*Pro se* Petitioner Lavoine Gainey ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 25, 2005, in New York State, County Court, Orleans County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[1]), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03 [2][1]), and Reckless Endangerment in the First Degree (Penal Law § 120.25).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

---

[1]    Subparagraph [2] of § 265.03 of the Penal Law has since been renumbered as subparagraph [1][b], and provides that "[a] person is guilty of criminal possession of a weapon in the second degree when with intent to use the same unlawfully against another, such person . . . possesses a loaded firearm[.]"  Penal Law § 265.03[1][b].

-1-

## II. Factual Background and Procedural History

At 2:30 a.m. on July 10, 2004, Petitioner shot and killed Chancy Williams ("Williams" or "the victim") in the Village of Albion, New York. In the hours leading up to the murder, Petitioner and his friend, Deshawn Scott ("Scott"), had a series of altercations with William and Williams' friends. Trial Transcript [T.T.] 46-66, 71-98, 104-109, 115-122. Following the final altercation, Petitioner borrowed a car from a neighbor, and he and another friend, Dywand Jackson ("Jackson"), picked up Scott, and then went to check on another friend, Toland Canty ("Canty"). T.T. 199-202, 327-331. After they located Canty at a nearby bar, they returned with Canty to his home where Petitioner secured a pair of gloves, changed into a "hoody" sweatshirt, and requested that Canty tell him where Williams and Williams' friends could be located. T.T. 149-152, 163, 210, 211-213, 259-261, 340-341. Before the men left Canty's house, Canty saw something wrapped in a handkerchief in the pocket of the "hoody" sweatshirt Petitioner was wearing. T.T. 157, 168.

Petitioner, Scott, Jackson, and Canty then drove to the Beechwood Apartments that Canty had identified as the place where Williams was staying. T.T. 152-154, 212-214, 342-343. The men could not immediately locate William and/or Williams' friends, and Canty told Petitioner that he wanted to get out of the car. T.T. 155, 157, 215. Petitioner drove Canty home. Petitioner, Scott and

Jackson then returned to the Beechwood Apartment complex and parked their vehicle. T.T. 155, 216-218, 343-343. Scott was instructed by Petitioner to stay in the car. T.T. 220-221. Petitioner and Jackson exited the car, walked around the exterior wooded area of the apartment complex, and then returned to the car. T.T. 345-346. Petitioner indicated that he could not locate any of the individuals who had been involved in the earlier altercations, but that he was not leaving the apartment complex "until somebody's dead." T.T. 223-224. The three men sat in the car and smoked cigarettes for about five minutes, and then Petitioner and Jackson exited the vehicle. The two men walked back into the wooded area around the apartment complex. T.T. 269, 346, 364, 357-358. When Williams exited the building at approximately 2:30 a.m., Petitioner ran up to him and fired a gun repeatedly striking him in his face, head, chest and back, killing him, and also hitting a nearby apartment building. T.T. 306-307, 624-640, 642, 648.

A yellow latex glove was later recovered from the scene of the crime, as well as several cigarette butts, one of which matched Petitioner's DNA and was found along the wooded trail area leading to the apartment complex. T.T. 114-115, 160-161, 247-248, 360-361, 470-474, 554, 557, 580-586, 588-589.

New York State Investigators Colon and Black arrested Petitioner in Rochester, New York, on July 11, 2004. When the officers brought Petitioner to the police barracks in Albion,

Officer Colon read Petitioner his <u>Miranda</u> warnings, and Petitioner indicated that he understood those warnings and agreed to speak with the officers. Thereafter, Petitioner gave several oral statements and responded with physical gestures in response to the officers' questions. Petitioner's statements acknowledged his presence at the altercation leading up to Williams' murder, but his gestures were ambiguous as to whether he committed the murder. T.T. 677-716.

On July 29, 2004, Petitioner was indicted by the Orleans County Grand Jury under Indictment No. 04-58. He was charged with two counts of Murder in the Second Degree, one count of Criminal Possession of a Weapon in the Second Degree, and one count of Reckless Endangerment in the First Degree.

Prior to trial, a <u>Huntley</u> hearing[2] was held, wherein the trial court found that Petitioner had waived his <u>Miranda</u> rights, and that testimony regarding Petitioner's police interview would be allowed at trial. Hearing Minutes [H.M.] 180-182. Petitioner did not present evidence or witnesses at this hearing.

Petitioner proceeded to trial, but did not testify. On February 2, 2005, the jury convicted Petitioner of intentional murder in the second degree, criminal possession of a weapon in the

---

[2] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965). A <u>Huntley</u> hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

second degree, and reckless endangerment in the first degree.[3] T.T. 829-832.

On April 14, 2005, Petitioner, through his trial counsel, moved to set aside the verdict pursuant to New York Criminal Procedure Law ("C.P.L.") §§ 330.30, 330.40, 330.50. The trial court denied this motion, finding that the proof against Petitioner was overwhelming. Sentencing Minutes [S.M.] 2-4.

On April 25, 2005, Petitioner was sentenced as a second felony offender to an indeterminate term of twenty-five years to life for the murder count, a determinate fifteen year term for the weapon possession count, and an indeterminate term of three and a half years to seven years for the reckless endangerment count. S.M. 10-12. The court also issued orders of protection for the victim's family, Scott, and Scott's family. S.M. 12.

Petitioner appealed his judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department on November 17, 2006. People v. Gainey, 34 A.D.3d 1250 (4th Dept. 2006); lv. denied, 8 N.Y.3d 880 (2007).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court erred when it did not grant Petitioner's motion to set aside the jury verdict because the evidence was legally insufficient to support his

---

[3]    Ultimately, the count of depraved indifference murder was not submitted for the jury's consideration. T.T. 737-738, 740.

conviction; (2) the prosecutor's inflammatory summation denied Petitioner a fair trial; and (3) that his pre-trial motion to suppress his statements should have been granted. Petition [Pet.] ¶22A-C (Dkt. #1); Pet'r. Answer and Memo. of Law in Support of Writ of Habeas Corpus [Mem.] (Dkt. #13). Petitioner's claims are exhausted and properly before this Court. See 28 U.S.C. § 2254(b)(1)(A).

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as

determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see

<u>also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B.  Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<em>en banc</em>), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C.  The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. <u>See</u> <u>id.</u> It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

## IV. Petitioner's Claims

## 1. Insufficiency of the Evidence

Petitioner argues that the trial court erred when it did not grant Petitioner's motion to set aside the jury verdict because the evidence was legally insufficient to support his convictions.[4]

---

[4]    Although Petitioner frames this claim as a sufficiency of the evidence claim in his habeas corpus petition, he argues in his supporting memo that the "verdict was contrary to the weight of the evidence." Mem., 16. To the extent that Petitioner alleges that the verdict was against the weight of the evidence, such a claim is not cognizable by this Court on habeas corpus review. <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) (finding that challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review).

Pet. ¶22A; Mem., Point One.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.  The Appellate Division, Fourth Department, determined that, "[t]he evidence, viewed in the light most favorable to the People, is legally sufficient to support the conviction, and the verdict is not against the weight of the evidence."  Gainey, 34 A.D.3d at 1251 (internal citations omitted).

A petitioner who challenges the sufficiency of the evidence to support his conviction faces a "very heavy burden."  Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995).  The standard to be applied on habeas review when the claim of legally insufficient evidence is made is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In making this assessment, the court must "credit every inference that could have been drawn in the state's favor . . . whether the evidence being reviewed is direct or circumstantial."  Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir.), cert. denied, 488 U.S. 929 (1988).

As the Supreme Court has instructed, this Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the evidence.  There was ample evidence upon which a rational trier of

fact could have found beyond a reasonable doubt that Petitioner's conduct established the essential elements of the crimes of murder in the second degree,[5] criminal possession of a weapon in the second degree,[6] and reckless endangerment in the first degree.[7]  The evidence at trial established the following:  that, following their final altercation, Petitioner was determined to kill Williams or one of Williams' friends; that, after the final altercation, Scott was ready to call it even, but Petitioner remained angry; that, after the final altercation, Petitioner and Scott drove to Rochester, but that Petitioner, thereafter, borrowed a vehicle and made the decision to return to Albion on the night of the murder; that Petitioner found a pair of gloves, switched his shirt for a "hoody" sweatshirt, and insisted that Canty show him where Williams and his friends were staying; that Petitioner drove over to the Beechwood Apartment complex where Williams or Williams' friends

---

[5]     Penal Law § 125.25[1] provides that, "[a] person is guilty of murder in the second degree when [w]ith intent to cause the death of another person, he causes the death of such person or of a third person[.]"

[6]     Subparagraph [2] of § 265.03 of the Penal Law has since been renumbered as subparagraph [1][b], and provides that "[a] person is guilty of criminal possession of a weapon in the second degree when with intent to use the same unlawfully against another, such person . . . possesses a loaded firearm[.]"  This conviction was supported by the same evidence supporting Petitioner's murder conviction.  T.T. 413-416, 442, 449-451.

[7]     Penal Law § 120.25 provides that, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."  This conviction was supported by the bullet pulled from a nearby apartment building at the crime scene, in conjunction with the following: Petitioner's statement to Scott and Jackson that, as soon as he saw Williams, he ran up and starting shooting; and police testimony at trial that there were numerous apartment buildings near the Beechwood Apartments, holding approximately 150 units in which several hundred people lived.  T.T. 33-34, 306-307.

were believed to be staying; that Petitioner indicated he "was going to get" Williams or Williams' friends; that Petitioner waited for Williams at the Beechwood Apartment complex, and when Petitioner could not immediately locate Williams and/or Williams' friends, he stated to Scott that he would not leave until someone was dead; that Petitioner ignored his friends' pleas for all of them to leave and go home; that, sometime thereafter, Petitioner and Jackson exited the vehicle and walked off into a wooded area leading to the apartment complex; and that, shortly thereafter, five or six gunshots were fired from the direction of the apartment complex. T.T. 152-155, 157, 165-166, 191, 195, 198, 199-205, 217, 212-224, 268, 316-318, 330-335, 342-343, 345-346. Additionally, the trial evidence established that it was Petitioner who engineered how to get away after the shooting, and arranged to get rid of the bullet shells after telling Scott that he had run up and shot Williams "in the face." T.T. 220, 235-240, 306-307.

Moreover, the testimony from the prosecution's witnesses was consistent with one another, and was also consistent with the physical evidence that was recovered from the crime scene and was presented at trial. T.T. 228-230, 235-240, 269, 346-366, 426-480, 485-486, 538-543, 598-599, 602.

Accordingly, the Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied Jackson v. Virginia. Habeas relief is not available to Petitioner,

and his claim that the evidence was insufficient to support his convictions is dismissed.

## 2.   Prosecutorial Misconduct

Petitioner contends that the prosecution's inflammatory summation denied him a fair trial. Pet. ¶22B; Mem., Point Two. Petitioner raised this claim on direct appeal, and it was rejected on state procedural grounds for failure to properly preserve the issue for appellate review. Gainey, 34 A.D.3d at 1251. Consequently, Petitioner's claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court explicitly relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review. The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). The Appellate Division's reliance on C.P.L. § 470.05(2) is an independent and adequate state ground, barring this Court's review of Petitioner's claim that

prosecutorial misconduct denied him of his constitutional right to a fair trial. A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Here, Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural bar. He does allege, however, by way of conclusory assertion, that "the failure of this [C]ourt to consider this claim will result in a fundamental miscarriage of justice." Mem., 27. Such a contention, unsupported by factual evidence, is not sufficient to sustain a claim of actual innocence. See Schlup v. Delo, 513 U.S. 298, 324 (1995) ("To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."). Accordingly, habeas relief is unavailable to Petitioner, and the claim is dismissed.

**3.   Pre-Trial Motion to Suppress Statements Should Have Been Granted**

Petitioner argues that there was insufficient evidence for the Huntley court to have concluded that: (1) Petitioner waived his Miranda rights; and (2) Petitioner's statements and gestures in response to police questioning were voluntary and, therefore, admissible.  Pet. ¶22C.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.  The Appellate Division, Fourth Department, determined that, "the record of the Huntley hearing supports County Court's determination that defendant waived his Miranda rights and that his responses during the police officers' interrogation were voluntary." Gainey, 34 A.D.3d at 1251 (internal citations omitted).

Here, the following facts were established at the pre-trial Huntley hearing:  that Officers Colon and Black and Detective Sacco transported Petitioner from Rochester to Albion on July 11, 2004; that, shortly after they arrived at the police barracks, Colon read Petitioner his Miranda rights from an NYSP form, on which he noted the exact time he had administered said warnings to Petitioner; that Petitioner indicated to Colon and Black that he understood his Miranda rights and agreed to speak with them, although he refused to sign the Miranda form to that effect; that Petitioner voluntarily took a polygraph test, and spoke with police for approximately five hours before requesting counsel, at which time the interview promptly ended; and that, during the interview,

Petitioner was not restrained, was given breaks, food and drink, and was not threatened or promised anything by police. H.M. 111-114, 117, 124-125, 135-137, 145, 157-159, 175-176. 156-158, 166, 170-171.

These factual findings describing what transpired between Petitioner and the police are supported by the record at the suppression hearing and are presumed to be correct. <u>See</u> 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut them with clear and convincing evidence.

**(1)  Waiver of <u>Miranda</u> Rights**

First, Petitioner contends that there was insufficient evidence for the <u>Huntley</u> court to have concluded that he voluntarily waived his <u>Miranda</u> rights. The Court rejects Petitioner's contention.

In <u>Miranda v. Arizona</u>, the Supreme Court established that certain warnings are required prior to custodial interrogation. However, when there is a knowing and voluntary waiver of the <u>Miranda</u> warnings, law enforcement officers may question a defendant until he clearly requests an attorney or invokes his right to remain silent. <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452, 370-371 (1994). A <u>Miranda</u> waiver may be implied from the circumstances, and where a defendant indicates that he understands his rights, does not request counsel, and proceeds to answer an officer's questions, such circumstances support the conclusion that <u>Miranda</u>

was waived.  See North Carolina v. Butler, 441 U.S. 369, 373 (1979) (rejecting a rule that an explicit statement of waiver is necessary to support a finding that a defendant waived his right to remain silent or right to counsel guaranteed by Miranda); see also Oliveira v. Phillips, 05 Civ. 564 (SAS), 2007 U.S. Dist. LEXIS 74118, *34 (S.D.N.Y. Sept. 28, 2007) ("a criminal defendant's refusal to sign a Miranda card does not, without more, constitute an invocation of his right to remain silent") (citing, inter alia, United States v. Spencer, 995 F.2d 10, 12 (2d Cir. 1993)); United States v. Plugh, 522 F.Supp. 2d 481, 493 (W.D.N.Y. June 11, 2007) (a "defendant's refusal to sign a waiver form is not dispositive of the issue of waiver") (citing, inter alia, United States v. Boston, 508 F.2d 1171, 1175 (2d Cir. 1974).

Here, Officer Colon read Petitioner his Miranda rights, and Petitioner agreed to speak to police, despite his refusal to sign the Miranda form. H.M. 113-114, 158-159. Additionally, Petitioner volunteered to take a polygraph test. Thus, this Court finds that the Appellate Division reasonably concluded that the Huntley court properly found a Miranda waiver under the evidence presented at the Huntley hearing. That conclusion is in accord with clearly-established Supreme Court precedent, and the Court finds no reason to disrupt the state court's determination that Petitioner voluntarily waived his Miranda rights.

**(2)     Voluntariness of Petitioner's Statements**

Next, Petitioner contends that there was insufficient evidence for the Huntley court to have concluded that his statements and gestures in response to police questioning were voluntary and, therefore, admissible at trial.   The Court also rejects this contention.

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir.1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 287 (1991)); see also Nova v. Bartlett, 211 F.3d 705, 707 (2d Cir. 2000); Mincey v. Arizona, 437 U.S. 385, 398 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; instead, the Court is under a duty to make an independent evaluation of the record).   "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'"   Nelson, 121 F.3d at 833 (quoting Green v. Scully, 850 F.2d 894, 901 (2d Cir.), cert. denied, 488 U.S. 945 (1988)).   Factors to be considered include the accused's experience and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics.   Id.

(citing Green, 850 F.2d at 901). "'Subsidiary questions, such as the length and circumstances of [an] interrogation," or whether "'the police engaged in the intimidation tactics alleged by the defendant," are entitled to the presumption of correctness.'" Id. (quoting Miller v. Fenton, 474 U.S. 104, 112, 117 (1985) ); see also Towndrow v. Kelly, 98-CV-0509, 2000 U.S. Dist. LEXIS 21969.

At the outset, the Court notes that there was no affirmative admission or confession involved in this case, nor were Petitioner's statements presented to the jury as such. Rather, Officers Colon and Black each testified to Petitioner's head movements during questioning, but did not characterize those gestures as admissions or confessions before the jury. T.T. 686-689, 715-716. And, to the extent that the gestures were characterized as "nods" and "admissions," such characterization was introduced at trial by defense counsel and again referenced as such during defense counsel's closing statement. T.T. 700, 749-750. In any event, through defense counsel's cross examinations, the jury learned: (1) that Petitioner told Colon that he had no argument with the victim; (2) that Petitioner never told Colon that he had committed the murder; and (3) that Petitioner affirmatively informed Black that he did not shoot Williams. T.T. 696, 701, 725, 728. In short, and contrary to Petitioner's assertion, the jury never heard testimony that there was an unambiguous confession in this case.

Nonetheless, *assuming arguendo* that Petitioner's physical and oral statements to police are considered a "confession" or "admission," the Court finds that such physical and oral statements were not involuntary. In viewing the totality of the circumstances, neither the conditions of the interrogation nor the conduct of the police support Petitioner's assertion that his statements were involuntary. Petitioner was not restrained during the interview, he received breaks, food and drink, and voluntarily took a polygraph test.

The <u>Huntley</u> court credited the officers' testimony that: (1) Petitioner was read his <u>Miranda</u> rights and indicated to police that he understood them; (2) Petitioner agreed to speak with the police and that he did not ask for the interview to end until much later when he invoked his right to counsel; (3) as soon as Petitioner requested counsel, the officers' questioning ceased; (4) Petitioner was not restrained, he was given breaks, food and drink; and (5) no one threatened Petitioner or made promises to induce him to answer questions. Petitioner has failed to provide clear and convincing evidence to undermine the findings of the <u>Huntley</u> court.

Accordingly, the Court finds that the Appellate Division's denial of Petitioner's <u>Miranda</u> and voluntariness claims was objectively reasonable under clearly-established Supreme Court precedent.

Habeas relief is not available to Petitioner, and the claim is

dismissed.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    June 21, 2010
          Rochester, New York